UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
JUNWEN JIANG,

                              Plaintiff,

      - against -

JP MORGAN CHASE BANK, N.A.,

                              Defendant.
-------------------------------------------------------------x

**OPINION & ORDER
ON MOTION TO DISMISS**

No. 25-CV-2434 (CS)

Appearances:

Brian L. Ponder
Brian Ponder LLP
New York, New York
*Counsel for Plaintiff*

Christopher B. Turcotte
Turcotte Law, P.C.
New York, New York
*Counsel for Defendant*

Seibel, J.

Before the Court is the motion to dismiss of Defendant JP Morgan Chase Bank, N.A.

(ECF No. 21.)  For the following reasons, Plaintiff's claim is dismissed without prejudice.

I.      **BACKGROUND**

I accept as true the facts, but not the conclusions, set forth in Plaintiff's Second Amended

Complaint.  (ECF No. 19 ("SAC").)

A.      **Facts**

In 2019, Plaintiff Junwen Jiang opened a business credit card account with Defendant for

her company, American International Eduservice.  (*Id.* ¶¶ 10-11.)  The account was to be used

exclusively for Plaintiff's business, and from 2019 to 2024, was never reported to Plaintiff's

personal credit files maintained by credit reporting agencies ("CRAs") TransUnion, Equifax and Experian. (*Id.* ¶ 11.) Plaintiff had at least three personal credit card accounts with Defendant, and beginning in October 2024, Defendant reduced her personal credit limits for these accounts before eventually closing them. (*Id.* ¶ 26.) Defendant also repeatedly contacted Plaintiff to collect on debt that had accumulated on the business account, and in late February 2025, Defendant reported the business account to Plaintiff's personal credit files with TransUnion and Equifax. (*Id.* ¶¶ 12, 26.) Plaintiff says this report to the CRAs was erroneous, and because the business account had a high balance, Plaintiff's personal credit score dropped significantly – falling "to a level that jeopardized her ability to secure business funding." (*Id.* ¶ 12; *see id.* ¶ 15.) Plaintiff believes that Defendant wanted "to pressure Plaintiff to pay off the business card debt by reporting it to her personal credit file." (*Id.* ¶ 26.)

The inaccurate information remained on Plaintiff's personal credit files with TransUnion and Equifax for approximately two to three weeks. (*Id.* ¶ 13.) Plaintiff had been preparing to seek a cash-out refinance mortgage of $750,000 to $1,000,000 on a commercial property to fund her business, but when she checked her credit report and noticed the inaccuracy, Plaintiff did not apply for the mortgage as planned, nor for any other lines of credit, due to fear that she would be rejected, offered higher rates or have to accept unfavorable terms. (*Id.* ¶¶ 14, 18.) Plaintiff also suffered "immediate and severe emotional distress" as a result of the inaccurate reporting. (*Id.* ¶ 16.) She felt anxiety and depression, and experienced physical symptoms such as insomnia, lost appetite, and difficulty concentrating. (*Id.*) Plaintiff's behavior also changed, as she became more irritable, yelling at her children and expressing "hopelessness about her business and family's future." (*Id.* ¶ 17.) In an affidavit attached to her SAC, Plaintiff's husband corroborates

the distress that Plaintiff experienced in connection with her reduced credit score.  (*See* ECF No. 19-2.)

Plaintiff filed a dispute relating to the reports on March 9, 2025 through a Consumer Financial Protection Bureau ("CFPB") portal, which notified TransUnion, Equifax and Defendant of the inaccurate reporting.  (SAC ¶¶ 19-20.)  Those entities acknowledged receipt of the dispute through the CFPB portal, and TransUnion and Equifax forwarded the dispute to Defendant.  (*Id.* ¶ 20.)  On March 18, 2025, Defendant sent Plaintiff a letter acknowledging that the "business card account . . . was incorrectly reported to your personal credit file" and stating that Defendant had "sent updated information to the credit reporting agencies to correct your personal credit file."  (ECF No. 19-1; *see* SAC ¶ 21.)  On or about May 5, 2025, TransUnion confirmed through the CFPB portal that the business credit card account was no longer on Plaintiff's credit file, and Equifax similarly updated its records.  (SAC ¶ 24.)

**B.      Procedural History**

Plaintiff commenced this action on March 21, 2025, and initially appeared *pro se*.  (ECF No. 1.)  On April 17, 2025, Defendant filed a pre-motion letter in anticipation of its motion to dismiss.  (ECF No. 8.)  Plaintiff responded, (ECF No. 10), and before the Court held a pre-motion conference, counsel appeared on Plaintiff's behalf, (ECF No. 15).  Now through counsel, Plaintiff filed an amended complaint on June 18, 2025.  (ECF No. 16.)  The Court held a pre-motion conference on June 24, 2025, at which it granted Plaintiff leave to file her SAC and set a briefing schedule for the motion to dismiss.  (*See* Minute Entry dated June 24, 2025.)  Plaintiff filed her SAC on July 8, 2025, and the instant motion followed.  (ECF No. 21.)

## II.    LEGAL STANDARD

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint."  *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008), *vacated and superseded on other grounds on reh'g en banc*, 585 F.3d 559 (2d Cir. 2009).[1]  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)); *see Seljak v. Pervine Foods, LLC*, No. 21-CV-9561, 2023 WL 2354976, at *4 (S.D.N.Y. Mar. 3, 2023).  Where a party lacks standing to bring a claim, the court lacks subject-matter jurisdiction over that claim and must dismiss it without prejudice.  *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54 (2d Cir. 2016).

"The party invoking federal jurisdiction bears the burden of establishing" that it exists, *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992), and "the plaintiff must allege facts that affirmatively and plausibly suggest that [she] has standing to sue," *Seljak*, 2023 WL 2354976, at *4.  "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction."  *Fountain v. Karim,* 838 F.3d 129, 134 (2d Cir. 2016); *see Tyrnauer v. Ben & Jerry's Homemade, Inc.*, 739 F. Supp. 3d 246, 254 (D. Vt. 2024); *Vargas v. Credit Control, LLC*, No. 24-CV-7885, 2026 WL 866835, at *3 (S.D.N.Y. Mar. 30, 2026).  And while "'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it,'" *Kell v. Lily's Sweets, LLC*, No. 23-

---

[1] Unless otherwise indicated, case quotations omit internal quotation marks, citations, footnotes and alterations.

CV-147, 2024 WL 1116651, at *2 (S.D.N.Y. Mar. 13, 2024) (quoting *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008)), the Court, on a facial challenge to subject-matter jurisdiction, "presume[s] that general allegations embrace those specific facts that are necessary to support the claim," *Carter*, 822 F.3d at 58.  Furthermore, "a district court . . . may refer to evidence outside the pleadings."  *Makarova*, 201 F.3d at 113.

### III.    DISCUSSION

Plaintiff's sole cause of action alleges a violation of 15 U.S.C. § 1681s-2(b), a provision of the Fair Credit Reporting Act ("FCRA"), based on Defendant's alleged failure to conduct a reasonable investigation into the inaccuracy on her credit report.  (SAC ¶¶ 32-43.)  Defendant moves to dismiss Plaintiff's SAC pursuant to Rule 12(b)(6) for failure to state a claim.  (*See* ECF No. 23 ("D's Mem.") at 3.)  A federal court, however, has "an independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties." *New Jersey v. Bessent*, 149 F.4th 127, 141 (2d Cir. 2025); *see Behrens v. JPMorgan Chase Bank, N.A.*, 96 F.4th 202, 207-08 (2d Cir. 2024) ("axiomatic" that federal courts have duty to ensure they have subject matter jurisdiction); *Nwanze v. Philip Morris Inc.*, No. 97-CV-7344, 1999 WL 292620, at *2 (S.D.N.Y. May 10, 1999) ("[I]f a federal court has reason to doubt its jurisdiction, it must always conduct a jurisdictional inquiry in the first instance.").[2]  Accordingly, I will address Plaintiff's standing to bring her claim.

---

[2] Defendant did not raise lack of subject matter jurisdiction as a ground for dismissal in its motion papers, but did so in its pre-motion letter in anticipation of its motion to dismiss. (ECF No. 8 at 2-3 (discussing requirement to plead injury in fact).)  Regardless of whether Defendant has abandoned that argument, a district court must still *sua sponte* consider subject matter jurisdiction because "federal courts are courts of limited jurisdiction." *Behrens*, 96 F.4th at 207.

A.      **Standing**

To establish Article III standing, a plaintiff must plausibly plead that (1) she has suffered an injury in fact; (2) there is a causal connection between the injury and the conduct of which the plaintiff complains; and (3) it is likely that the injury will be redressed by a favorable decision. *See Lujan*, 504 U.S. at 560-61; *Krausz v. Equifax Info. Servs., LLC*, No. 21-CV-7427, 2023 WL 1993886, at *7 (S.D.N.Y. Feb. 14, 2023).  In *TransUnion LLC v. Ramirez*, the Supreme Court "emphasized in cases involving the FCRA that only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Hines v. Equifax Info. Servs., LLC*, No. 19-CV-6701, 2022 WL 2841909, at *7 (E.D.N.Y. July 16, 2022) (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021)), *report and recommendation adopted as modified*, 2024 WL 4132333 (E.D.N.Y. Sept. 10, 2024).  Thus, a plaintiff "cannot satisfy the demands of Article III by alleging a bare procedural violation," and must allege a tangible harm "such as physical or monetary damage, or an intangible harm that bears a close relationship to harms traditionally recognized as providing a basis for lawsuits." *Id.* Additionally, "it is well established in principle that the pleading standard for constitutional standing is lower than the standard for a substantive cause of action," but a plaintiff must still "plead enough facts to make it plausible that they did indeed suffer the sort of injury that would entitle them to relief." *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 65-66 (2d Cir. 2021).  In *Ramirez*, the Court found that individuals whose credit reports were inaccurate but never disseminated to potential creditors lacked standing. *See* 594 U.S. at 433-34.

Plaintiff claims three categories of alleged harms:  that she (1) suffered severe emotional distress from the inaccurate information on her credit report; (2) incurred costs to remedy the

6

inaccurate credit report; and (3) faced a "substantial risk of financial harm" that prevented her from applying for the cash-out refinance mortgage.  (SAC ¶ 40.)  None confers standing.

After *Ramirez*, a speculative risk of financial harm is not sufficient to confer standing – even where, as here, Plaintiff alleges that she forwent a loan opportunity due to her lowered credit score.  A "chilling effect on future applications for credit" is insufficient to demonstrate concrete injury.  *Zlotnick v. Equifax Info. Servs., LLC*, 583 F. Supp. 3d 387, 391 (E.D.N.Y. 2022); *see Rodriguez v. TD Bank, N.A.*, No. 26-CV-1133, 2026 WL 836697, at *3 (S.D.N.Y. Mar. 26, 2026) (no standing where plaintiff alleges credit score was negatively impacted and he "intentionally did not submit" applications requiring credit check).  *But see Adler v. Penn Credit Corp.*, No. 19-CV-7084, 2022 WL 744031, at *10 (S.D.N.Y. Mar. 11, 2022) (observing in *dicta*, with citations to other decisions' *dicta*, that in Fair Debt Collection Practices Act ("FDCPA") context, concrete injury could be shown "where evidence shows specific plans to invest . . . money such that the plaintiff's credit report would be requested imminently and a defendant-debt collector's inaccurate statements would have a direct effect," but finding that adverse effects on credit score do not confer standing where purported risk of credit denial did not materialize).  Although Plaintiff points to a specific cash-out refinance mortgage opportunity that she wanted to pursue around the time that her credit score decreased, she never applied for that loan nor had her credit report produced to a third party in anticipation of the loan.  (*See* SAC ¶¶ 14, 18, 27.)  Moreover, rather than suggesting that Plaintiff's loan application was about to be filed, the SAC merely states that Plaintiff was "preparing to seek" the loan when she discovered her lowered credit score.  (*Id.* ¶ 14.)  This hardly suggests that a credit inquiry was imminent.  "A plaintiff cannot sidestep [*Ramirez*] by pointing to hypothetical credit lines she never pursued."  *Gonzalez v. Experian Info. Sols., Inc.*, 819 F. Supp. 3d 183, 186 (E.D.N.Y. 2026).  Plaintiff's allegations

are thus too speculative to plausibly allege an imminent risk of financial harm, and do not demonstrate that she has standing.[3]

The costs Plaintiff allegedly bore to remedy the inaccurate report are also insufficient as alleged.  In some instances, time and money incurred to remedy an inaccurate credit report could confer standing.  *See Ramirez*, 594 U.S. at 425 ("If a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III."); *Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, 942 F.3d 1200, 1207 (11th Cir. 2019) ("[T]ime spent by a person attempting to correct a false credit report constitutes a concrete injury for purposes of an FCRA claim."); *Henkel v. U.S. Dep't of Educ.*, No. 24-CV-1676, 2025 WL 2049267, at *6 (D.D.C. July 22, 2025) ("Courts have routinely found that wasted time resulting from a defendant's FCRA violation is a sufficiently concrete and particularized injury to establish standing.").[4]  But Plaintiff does not identify any costs incurred after Defendant's

---

[3] Even if Plaintiff's allegations were sufficient to demonstrate an imminent risk of financial harm, she lacks standing to pursue the relief that she seeks.  "[A] person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring," but "a plaintiff's standing to seek injunctive relief does not necessarily mean that the plaintiff has standing to seek retrospective damages."  *Ramirez*, 594 U.S. at 435-36.  Plaintiff seeks damages, costs and any other relief the Court deems proper, (SAC ¶¶ 45-49), but unsurprisingly does not seek an injunction, given that she alleges that Defendant corrected the alleged inaccuracy in her credit report, (*see id.* ¶¶ 21-24).  Accordingly, Plaintiff's risk of financial harm cannot confer standing for the relief that she seeks or that could conceivably be granted.

[4] That said, the Eleventh Circuit has clarified that to show injury in fact, the wasted time and resources must be in "respon[se] to something that is itself a concrete harm."  *Nelson v. Experian Info. Sols. Inc.*, 144 F.4th 1350, 1355 (11th Cir. 2025).  And courts, including those within this Circuit, have noted that absent an allegation that inaccurate information in a credit report was ever published to a third party (*i.e.*, a party *other than* a CRA) – which Plaintiff does not allege occurred here – the harm from wasted time and money does not establish standing. *See id.* at 1352, 1355-56 (collecting cases); *Cavazzini v. MRS Assocs.*, 574 F. Supp. 3d 134, 144 (E.D.N.Y. 2021) ("[W]here – as here – the related injury does not itself support standing, the alleged wasted time cannot alone meet the requirements of Article III."); *see also Seaman v. Nat'l Collegiate Student Loan Tr. 2007-2*, No. 18-CV-1781, 2023 WL 6290622, at *19

obligation as a furnisher under the FCRA is alleged to have been triggered.  (SAC ¶¶ 29, 40 (alleging harm from time and cost to research credit report and file CFPB dispute and from unspecified communications with others).)  *See Suluki v. Credit One Bank, NA*, 138 F.4th 709, 719 & n.8 (2d Cir. 2025) (furnisher's duty to conduct reasonable investigation "arises only when the furnisher receives notice of a dispute from a CRA").  Costs that Plaintiff incurred before Defendant had any obligation to investigate or correct cannot confer standing.  *See Harb v. Westlake Servs. LLC,* 748 F. Supp. 3d 1170, 1182 (M.D. Fla. 2024) (harm plaintiff experienced "prior to filing his credit disputes are irrelevant to the FCRA" because furnishers' duties not triggered until after receiving notice of dispute from CRA); *Onosode v. Equifax Info. Servs.*, No. 20-CV-951, 2023 WL 2783263, at *10 (E.D. Tex. Mar. 29, 2023) (harms occurring before furnisher duty accrued under FCRA cannot confer standing), *report and recommendation adopted sub nom.*, *Onosode v. Equifax Info. Servs., LLC*, 2023 WL 3060790 (E.D. Tex. Apr. 22, 2023); *cf. Tescher v. Experian Info. Sols., Inc.*, No. 21-CV-2266, 2022 WL 564048, at *5 (S.D.N.Y. Feb. 23, 2022) (complaint plaintiff was injured "as a result of the errors on her credit report *occasioned by [d]efendant's flawed investigation*" sufficient to plead injury) (emphasis added).  And even if I were to assume that the unspecified communications occurred after the obligation was allegedly triggered, they are simply too speculative and conclusory as alleged, (*see* SAC ¶ 29 (cost of "communicating with her husband and potential lenders to assess the impact of her lowered credit score"); *id.* ¶ 40 (to the same effect)), to demonstrate a concrete injury, *see Vargas*, 2026 WL 866835, at *4 (conclusory allegation that "[p]laintiff spent time and resources as a result of [d]efendants' conduct" fails to plausibly allege standing); *Mohammadb v.*

---

(S.D.N.Y. Sept. 27, 2023) ("[T]he distribution of inaccurate information to a credit reporting agency, as opposed to a potential creditor does not constitute or cause concrete injury for standing purposes.").

*Nat'l Enter. Sys., Inc.*, No. 21-CV-5606, 2023 WL 6385765, at *2 (E.D.N.Y. Sept. 29, 2023) (to the same effect). Plaintiff's alleged costs incurred to remedy the inaccuracy thus do not confer standing.

Plaintiff's emotional harm as alleged similarly does not plausibly provide standing. In *Ramirez*, the Supreme Court observed, without deciding, that "a plaintiff 's knowledge that he or she is exposed to a risk of future physical, monetary, or reputational harm could cause its own current emotional or psychological harm." 594 U.S. at 436 n.7 (declining to resolve question because plaintiffs did not allege emotional harm). After *Ramirez*, the Second Circuit also posited that an emotional injury could confer standing in the FCRA context, but held that standing is not plausibly alleged where a plaintiff includes only "[a] perfunctory allegation of emotional distress, especially one wholly incommensurate with the stimulant." *Maddox*, 19 F.4th at 66; *accord Zlotnick*, 583 F. Supp. 3d at 391 ("Although there may be instances where emotional harm satisfies the Article III injury-in-fact requirement, such claims must be supported by sufficient allegations."). For an emotional harm to be considered concrete, the "close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts" would likely be an analogy to the tort of intentional infliction of emotional distress ("IIED"). *Ramirez*, 594 U.S. at 424, 436 n.7. Additionally, courts have found emotional injuries from inaccurate credit reports to confer standing where the allegations have connected a plaintiff's stress and anxiety to the publication of inaccurate information to third parties other than CRAs, such as existing or potential creditors. *See, e.g.*, *Henkel*, 2025 WL 2049267, at *3, *11 (standing for emotional injuries where "[CRA] published the [furnisher's] inaccurate information to [plaintiff's] prospective creditors"); *Magruder v. Cap. One, Nat'l Ass'n*, 540 F. Supp. 3d 1, 11 (D.D.C. 2021) (same). An allegation of distress and anxiety brought on by only

"a fear of a future harm that is not 'certainly impending'" is instead "too speculative to qualify as an injury in fact."  *Garland v. Orlans, PC*, 999 F.3d 432, 440 (6th Cir. 2021) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013)); *see Grelle v. Off. of Pers. Mgmt.*, No. 25-CV-189, 2026 WL 867709, at *10 (D.N.M. Mar. 30, 2026) ("For emotional distress or anxiety to confer standing the plaintiff also must allege imminent threat of future harm."); *see also Konig v. TransUnion, LLC*, No. 18-CV-7299, 2023 WL 3002396, at *7 (S.D.N.Y. Apr. 19, 2023) ("[H]arm based on a lowered credit score absent other concrete consequences resulting therefrom or based solely on disclosure to CRAs" does not confer standing under FCRA).

Here, Plaintiff alleges that she "suffered severe emotional distress, including anxiety, depression, hopelessness, and physical symptoms (insomnia, loss of appetite, difficulty concentrating), directly resulting from the inaccurate reporting and the fear of losing her business and family income."  (SAC ¶ 28; *see id.* ¶ 16.)  Plaintiff also says that her distress made her irritable and hopeless about her business and family's future, and that she yelled at her children as a result.  (*Id.* ¶ 17.)  These allegations were corroborated by her husband's affidavit attached to her complaint.  (*See* ECF No. 19-2.)  Although these allegations are not necessarily threadbare assertions, they are "wholly incommensurate with" and speculative of a *future* harm of *potential* disclosure to *potential* lenders, thus rendering Plaintiff's harm wanting for concreteness.  *See Maddox*, 19 F.4th at 66; *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 339-43 (2016) (describing "the distinction between concreteness and particularization" requirements for standing).  Plaintiff does not allege potential lenders received any inaccurate information in a credit check or that anyone other than CRAs ever knew about the inaccuracy from Defendant's reporting.  Without more, Plaintiff's allegations of stress and anxiety from a lowered credit score do not demonstrate

11

that "plaintiff suffered any concrete consequences as a result of an allegedly lowered credit score." *Zlotnick*, 583 F. Supp. 3d at 392; *see Konig*, 2023 WL 3002396, at *7.

Additionally, Plaintiff's alleged emotional injury cannot confer standing because it does not bear a close relationship to a common-law analogue. *See Ramirez*, 594 U.S. at 424. In *Ramirez*, the Supreme Court suggested that an emotional harm could confer standing where the plaintiff's harm was analogous to an IIED action. *Id.* at 436 n.7. But the IIED tort generally requires a defendant's conduct to be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Conboy v. AT & T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001). The Court does not doubt that Plaintiff was upset about seeing a sudden drop in her credit rating caused by her business debt being attributed to her personal credit. But it, let alone Defendant's taking at most nine days to correct it, is not so outrageous as to be analogous to the type of harm for which plaintiffs can seek redress through an IIED lawsuit. *See Schmelczer v. Penn Credit Corp.*, No. 20-CV-2380, 2022 WL 862254, at *7 (S.D.N.Y. Mar. 23, 2022) (collecting cases finding no standing where alleged FCRA violation was not "so inherently degrading that it would be reasonable to infer that a person would suffer emotional distress from the defendant's action"); *see also In re FDCPA Mailing Vendor Cases*, 551 F. Supp. 3d 57, 65 (E.D.N.Y. 2021) (In FDCPA context, "simply mailing a collection letter, even if erroneous, is a far cry from extreme and outrageous conduct"); *cf. Ramirez*, 594 U.S. at 458 (Thomas, J., dissenting) ("[O]ne need only tap into common sense to know that receiving a letter identifying you as a potential drug trafficker or terrorist is harmful.").[5] To find a concrete harm here would allow any litigant who

---

[5] Plaintiff's harm is also not analogous to a defamation action because the inaccurate information was never published to a third party. And for the same reason that analogizing to

faced a brief period of uncertainty – during which no third parties had access to or requested the inaccurate credit report – to sue over their speculative stress from a credit reporting inaccuracy. Absent allegations of how the inaccuracy affected or imminently threatened Plaintiff's concrete interests causing the distress and anxiety, or allegations of an inaccuracy of an outrageous nature, Plaintiff's claim is far from the type of concrete emotional harm that the Court believes *Ramirez* envisioned as sufficient.

### B.      Merits

Because I find Plaintiff lacks standing, I lack subject matter jurisdiction, do not reach the merits of the claim, and dismiss without prejudice.  *See Carter*, 822 F.3d at 54-55; *Fitzpatrick v. Midland Credit Mgmt., Inc.*, No. 24-CV-8556, 2025 WL 2711444, at *5 (S.D.N.Y. Sept. 23, 2025); *Barnes v. KOS, Inc.*, No. 23-CV-10104, 2025 WL 1928027, at *1 (S.D.N.Y. July 14, 2025).[6]

---

IIED fails, any analogy to an invasion of privacy action would similarly fail.  *See Cavazzini*, 574 F. Supp. 3d at 141 (inaccurate information may be "too *de minimis* to be analogous to an invasion of privacy" where inaccuracy does not rise to level "that would be highly offensive to a reasonable person").

[6] If I had subject matter jurisdiction, I would dismiss for failure to state a claim.  Plaintiff alleges that she notified Defendant and the CRAs of the dispute through the CFPB on March 9, 2025, and within nine days, on March 18, 2025, Defendant informed Plaintiff that it had corrected the erroneous reporting.  (*See* SAC ¶¶ 19-21.)  No claim under § 1681s-2(b) accrues until thirty days have elapsed from the defendant being notified.  *See Bongiovanni v. PennyMac Corp.*, No. 19-CV-3260, 2022 WL 17773729, at *7 (E.D.N.Y. Aug. 14, 2022) (furnisher liability under § 1681s-2(b) arises thirty days after notification of dispute), *report and recommendation adopted*, 2023 WL 6307313 (E.D.N.Y. Sept. 28, 2023); *Haynes v. TransUnion, LLC*, No. 19-CV-7157, 2021 WL 2179346, at *8 (E.D.N.Y. Feb. 4, 2021) (collecting cases) (same), *report and recommendation adopted*, 2021 WL 3185581 (E.D.N.Y. July 28, 2021).  And even if that were not the case, here Defendant corrected the error almost immediately upon notification, and Plaintiff does not explain what about its investigation was inadequate, let alone provide facts rendering any such conclusion plausible.  *See Lewis v. Synchrony*, No. 21-CV-9131, 2025 WL 3013142, at *1, *4 (S.D.N.Y. Oct. 28, 2025) (complaint does not plausibly allege § 1681s-2(b) violation where furnisher "allegedly acknowledged the [error] and . . . t[oo]k[] steps to correct inaccuracies in Plaintiff's credit reporting"); *cf. Hart v. Equifax Info. Servs. LLC*, No. 19-CV-

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's claims are dismissed without prejudice.  The Clerk

of Court is respectfully directed to terminate the pending motion, (ECF No. 21), and close the

case.

**SO ORDERED.**

Dated: June 12, 2026
       White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

---

342, 2019 WL 4757325, at *6 (N.D.N.Y. Sept. 30, 2019) (denying motion to dismiss where "erroneous information was not removed from Plaintiff's report after the 30-day deadline expired").

14